**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3866-18T3

TOYOTA LEASE TRUST,

     Plaintiff-Respondent,

v.

SEAN QUIGLEY,

     Defendant-Appellant.

_____

Argued March 10, 2020 – Decided April 15, 2020

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. SC-000200-19.

Kari B. Samuels argued the cause for appellant (Goldfein Attorneys At Law, attorneys; Kari B. Samuels, on the brief).

Walter F. Kawalec, III, argued the cause for respondent (Marshall Dennehey Warner Coleman & Goggin, attorneys; Walter F. Kawalec, III, on the brief).

PER CURIAM

In <u>Financial Services Vehicle Trust v. Panter</u>, 458 N.J. Super. 244 (App. Div. 2019), we held that a claim for "the diminution in value because [a motor vehicle] bear[s] the 'scarlet letter' of an accident history was cognizable" as an element of damages. <u>Id.</u> at 252. Such a claim, we observed

> is no more speculative than it is presumable. It is merely susceptible to proof. The owner of the claim remains obligated to persuade the factfinder with competent and admissible evidence that the vehicle's value has been decreased by this stigma.
>
> [<u>Id.</u> at 251.]

We also described other wrinkles that might appear in such a case, <u>id.</u> at 252-53, for the sake of providing guidance in numerous other similar cases pending in our courts, <u>id.</u> at 249.

Plaintiff Toyota Lease Trust brought this action against defendant Sean Quigley to pursue the same type of damages recognized in <u>Panter</u>. Plaintiff claimed defendant's negligence caused damage[1] to a 2015 Lexus CT200 Hybrid, which plaintiff owned but leased out to another. The lessor's accident with Quigley occurred on May 31, 2016, less than six months after the lease's inception, when the vehicle had only been driven about 4000 miles.

---

[1] Defendant stipulated his negligence caused the accident and damage to the vehicle; he did not stipulate to the amount of damage or plaintiff's entitlement to the damages sought here.

The trial took place only a few weeks after our <u>Panter</u> decision. Plaintiff called only one witness; defendant, none. Plaintiff elicited through its witness that the vehicle's rear bumper was damaged and replaced; defendant's negligence also caused some minor paint damage. Those items, however, were not the damages plaintiff sought. Instead, as in <u>Panter</u>, plaintiff sought to prove that the vehicle had been devalued by the stigma of having been in an accident. Its witness was offered and permitted to testify as an expert in vehicle evaluation and to provide a basis by which the trier of fact could quantify the damage caused by that stigma.

Plaintiff's expert witness, who works as a buyer for what he said was the country's largest wholesale dealer of vehicles, testified that the value of a vehicle – all other things being equal – is reduced by an accident history. As for the vehicle in question, the witness used something called Accu-Trade to estimate the vehicle's value at the time of the accident. He testified that a buyer would be expected to pay $22,306.56 on the date of the accident for the vehicle if it had never been in an accident, but $20,573.35 because it was in an accident, even when repaired to its pre-accident condition. The difference between these two figures constituted the amount of damages sought by plaintiff.

A-3866-18T3

Plaintiff's expert witness was cross-examined by defense counsel, and then extensively examined by the trial judge. Defense counsel elicited from the witness that the vehicle was sold at auction by plaintiff in May 2018 – after the lease term expired and approximately two years after the accident – for $18,500. Much of defense counsel's examination focused on how that resale may have been impacted by the accident history. Some of the judge's examination dealt with his view – as stated in one of his questions – that "the actual owner of this vehicle would not suffer a loss until it incurred a monetary loss [i.e., on eventual sale of the vehicle] for the vehicle." The witness continually responded – correctly – that this question called for a legal conclusion that he was not prepared to answer. Undeterred, the witness maintained his view that the vehicle was devalued simply because it carried with it – thanks to defendant's negligence – an accident history. But he was unable to provide any information about the condition of the vehicle or whether its value had been reduced or enhanced after the accident but before resale.

Once both sides rested and summed up, the judge rendered an oral opinion in which he described the reasons why he was unpersuaded by the witness's testimony. For the reasons given, the judge found that plaintiff had not proven its case and rendered a verdict in defendant's favor.

Plaintiff appeals, arguing the trial judge: (1) committed "an error of law when he refused to apply the well-established measure of damages and instead held that damages should be determined at the time of sale"; (2) erred "when he failed to . . . inquir[e] [or make a] finding as to whether auto valuation experts rely upon certain types of data, and again when he ignored the presumption of reasonable reliance on that data"; and (3) "abused his discretion by stepping into the shoes of defense counsel and questioning plaintiff's expert as a hostile witness." We find insufficient merit in these arguments to warrant further discussion, R. 2:11-3(e)(1)(E), and affirm, adding the following few comments.

We agree with plaintiff that the judge erred when he said in his oral decision that the stigma damages recognized in Panter are not "cognizable [until] the time of the [later] sale" of the vehicle. To be clear, the stigma is inflicted and the right of the injured party[2] to sue for the resulting damage arises when the accident history attaches to the vehicle. We would, however, agree with the trial judge that when – as here – a claim for such damages is sought after the vehicle has been sold, the factfinder has a right to expect that plaintiff will provide evidence about that resale because that evidence may impact the

---

[2] We did not in Panter – and we do not now – decide whether the true owner of the claim is the lessor or the lessee.

A-3866-18T3

factfinder's view of the expert's assessment.  Here, the expert provided only the date of the sale and the price received; he was unable to inform the factfinder about the vehicle's condition or provide any other information that might enlighten the factfinder about the accuracy of the stigma damage the expert assigned to the vehicle.  Because the expert failed to correlate his estimate of the stigma damage at the time of the accident with the price later paid for the vehicle, the factfinder here was entitled to reject the expert's conclusions and estimates.[3]

We do not view as fatal the trial judge's incorrect statement suggesting Panter is inapplicable in the absence of a resale.  Indeed, in arguing that the judge disregarded our prior holding, plaintiff misses the thrust of the trial judge's ultimate decision, which was simply based on the fact that the judge was

---

[3] For example, an expert might testify that a vehicle had a value of $20,000 prior to an accident that would be reduced by $1000 because of its accident history.  If persuasive evidence is produced about those conclusions, the factfinder could conclude that the plaintiff is entitled to $1000.  But, if the claim is not asserted until after the vehicle is sold and assuming the same vehicle sold a year later for $21,000, can it truly be said that the stigma caused any damage at all?  Without a persuasive explanation for such an outcome, a factfinder would be entitled to reject the claim of any diminution in value in that instance.  To recover in such a case, the plaintiff would have to offer persuasive evidence that the stigma still diminished the vehicle's value by testifying – if such a contention could be supported and maintained – that the vehicle would have sold for $22,000 but for the accident history.

A-3866-18T3

unpersuaded by plaintiff's expert. The judge stated at the outset of his oral decision that he had "considered the weight and the persuasiveness of [the expert's] testimony" and concluded he "d[id] not consider the witness's testimony to be reliable and worthy of belief." The judge came back to this core determination time and again throughout his opinion.

Indeed, the judge was particularly skeptical of the witness's use of "Accu-Trade" without a persuasive explanation for how this device or formula provided accurate results or whether the results so produced were "generally relied upon in the industry." And, as mentioned above, the judge was unwilling to rely on what this witness had to say because the witness "did not know the history of the car after May 31, 2016." This is a legitimate concern because, as we have explained, the eventual resale of the vehicle, even years later, might shed light on whether or to what extent the stigma impacted the property's value. We agree with plaintiff – as we recognized in Panter – that the damage was done when an accident history became attached to this vehicle. And that history attached when defendant's negligence caused the accident. That damage – despite the judge's mistaken comments – immediately ripened into a cognizable claim whether the

7

owner of the claim made a choice to keep or sell the vehicle.[4]  But, having said that, we also agree with the trial judge that when a claim is asserted after a vehicle's sale, the amount received, the condition of the vehicle when the sale occurred, and other relevant circumstances about the vehicle's history after the accident may illuminate for the factfinder the way toward fixing – or rejecting – an award for the stigma damage.  Because the expert could not provide sufficient evidence about the vehicle at the time of resale, the judge was entitled to reject the testimony as unreliable.  Indeed, in the very context in which the judge made his erroneous statement about Panter's application in the absence of a resale – which was irrelevant since here there was a resale – the judge expressed his determination that the expert was unreliable:

> It seems to me, and the [c]ourt so finds that if there is any cognizable damage, it would be at the time of the sale, taking into account the entire history of the vehicle, normal depreciation, and the like.  Therefore, I find that the offer of evidence in this case, I understand what the burden of proof is, and I find that the plaintiff has not met the burden of proof by a preponderance of the evidence.  I find that the testimony given was not

---

[4]  For example, the Supreme Court recently considered the manner in which a landowner may prove damages caused by the loss of trees and foliage due to another's trespass.  Nowhere in either the majority or dissenting opinion was there even the remotest suggestion that a diminution in the property's value caused by the trespass could not be realized until the plaintiffs sold their property.  See Kornbleuth v. Westover, __ N.J. __ (2020).

persuasive, was not reliable, was not credible. No cause for defendant.

The judge's assessment of the reliability and credibility of the expert's testimony is entitled to our deference. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). And plaintiff has failed to present us with a principled reason for intervening or second-guessing the trial judge's fact findings.

We lastly reject plaintiff's argument that, because he allowed the witness to testify as an expert, the judge was obligated to rely on that testimony. See Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 284-85 (1990) (recognizing the difference between the admissibility and reliability of expert testimony). And we reject the argument that the judge overstepped his role when questioning the witness. Having closely examined the trial transcript, it is clear the judge was simply attempting to elicit, as was his right, material facts from the witness so as to properly understand and weigh the evidence being offered. See State v. Medina, 349 N.J. Super. 108, 131 (App. Div. 2002).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3866-18T3